## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MANIDHAR KUKKADAPU, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| EMBRAER S.A., FREDERICO PINHEIRO FLEURY CURADO, JOSÉ ANTONIO DE ALMEIDA FILIPPO, and PAULO PENIDO PINTO MARQUES, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Manidhar Kukkadapu ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Embraer S.A. ("Embraer" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a class action on behalf of purchasers of Embraer's American Depositary Receipts ("ADRs") between April 16, 2012 and July 28, 2016, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Embraer designs, develops, manufactures, and sells aircraft and systems in Brazil, North America, Latin America, the Asia-Pacific region, Europe, and internationally.  Founded in 1969, the Company was formerly known as Embraer-Empresa Brasileira de Aeronáutica S.A. and changed its name to Embraer S.A. in November 2010.

3.      Embraer is headquartered in São Paulo, Brazil.  The Company's ADRs trade on the New York Stock Exchange ("NYSE") under the ticker symbol "ERJ."

4.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company had paid bribes to officials in the Dominican Republic to secure contracts for the sale of aircraft; (ii) Embraer's President and Chief Executive Officer ("CEO"), Defendant Frederico Pinheiro Fleury Curado ("Curado") was aware of the bribery scheme; (iii) the foreseeable consequences of the foregoing conduct would cost Embraer hundreds of millions of dollars; and (iv) as a result of the foregoing, Defendants' statements about Embraer's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

5.      On November 1, 2013, after the market closed, *The Wall Street Journal* reported that Embraer was under investigation by the U.S. and Brazilian governments concerning bribery of Dominical Republic officials to secure a contract for the sale of military aircraft.

6.      On this news, Embraer's ADRs fell $0.17, or 0.57%, to close at $29.55 on November 4, 2013, the next trading day.

7.      On September 23, 2014, shortly before the market closed, *The Wall Street Journal* reported that Brazilian authorities had filed bribery charges against eight Embraer employees, claiming that they had bribed officials in the Dominican Republic to secure a $92 million contract.

8.      On this news, Embraer's ADRs fell $0.26, or 0.68%, to close at $38.25 on September 24, 2014.

9.      On March 16, 2016, after the market closed, various media outlets reported that Elio Moti Sonnenfeld ("Sonnenfeld"), a sales consultant who purportedly paid bribes on behalf of Embraer, had told Brazilian prosecutors that he believed the Company's top managers, including Defendant Curado, then CEO of Embraer, knew of the illicit payments made in connection with the Dominican Republic sales.

10.     On June 9, 2016, after the market closed, Embraer announced that Defendant Curado was stepping down from his position as CEO after 32 years with the Company, and that Paulo César de Souza e Silva would replace Curado as of July 2016.

11.     On this news, Embraer's ADRs fell $1.18, or 5.44%, to close at $20.51 on June 10, 2016.

12.     On July 29, 2016, Embraer filed a Form 6-K with the SEC, stating, in relevant part, that:

> [N]egotiations with the U.S. Department of Justice (DOJ) and the Securities and Exchange Commission (SEC) for the settlement of the allegations of non-compliance with the U.S. Foreign Corrupt Practices Act (FCPA) have significantly progressed, to the point that ***Embraer is recognizing a US$ 200 million loss contingency in the quarter ended June 30, 2016***, reflecting the likely

3

outcome of this matter. The amount of the contingency is an estimate and has not been finally determined.

In addition to the monetary consequences, a final settlement with the DOJ and SEC is likely to include: (1) a deferred prosecution agreement (DPA), under which the prosecution of criminal charges against Embraer will be deferred for the term of the DPA, and dismissed upon the expiration of the term of the DPA, and (2) an imposition of an independent monitor to assess the Company's compliance with the terms of any agreement that may be reached with the U.S. authorities.  These may not be the only non-monetary consequences contained in any final settlement.

(Emphasis added.)

13.     That same day, Embraer also announced its financial and operating results for the quarter ended June 30, 2016.  Embraer reported, *inter alia*, the $200 million loss contingency described *supra* at ¶ 12 and a net loss for the quarter totaling $99.4 million, or $0.55 per share.

14.     On this news, Embraer's ADR price fell $2.93, or 13.82%, to close at $18.27 on July 29, 2016.

15.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

16.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

18.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)) because Embraer's ADRs trade on the NYSE, located within this Judicial District.

19.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

20.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Embraer ADRs during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

21.     Defendant Embraer is incorporated under the laws of Brazil, with its principal executive offices located at Avenida Presidente Juscelino Kubitschek, 1909, São Paulo Corporate Towers, 04543-907, São Paulo, Brazil.  Embraer's ADRs trade on the NYSE under the ticker symbol "ERJ."

22.     Defendant Curado served as CEO and President of Embraer from 2007 until his resignation effective July 2016.

23.     Defendant José Antonio de Almeida Filippo ("Filippo") has served as Executive Vice-President Finance, Chief Financial Officer ("CFO"), and Chief Investor Relations Officer of Embraer since June 2012.

24.     Defendant Paulo Penido Pinto Marques ("Marques") served as Executive Vice-President Finance, CFO, and Chief Investor Relations Officer of Embraer from July 2011 until April 2012.

25.     The Defendants referenced above in ¶¶ 22-24 are sometimes collectively referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background**

26.     Embraer designs, develops, manufactures, and sells aircraft and systems in Brazil, North America, Latin America, the Asia-Pacific region, Europe, and internationally.  Founded in 1969, the Company was formerly known as Embraer-Empresa Brasileira de Aeronáutica S.A. and changed its name to Embraer S.A. in November 2010.

27.     Embraer is headquartered in São José dos Campos, Brazil.  The Company's ADRs trade on the NYSE under the ticker symbol "ERJ."

**Materially False and Misleading
Statements Issued During the Class Period**

28.     The Class Period begins on April 16, 2012, when Embraer filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2011 (the "2011 20-F").  For 2011, Embraer reported net income of $93.62 million, or $0.13 per diluted share, on revenue of $5.90 billion, compared to net income of $326.44 million, or $0.45 per diluted share, on revenue of $5.34 billion for 2010.

29.     In the 2011 20-F, Embraer stated, in part:

*SEC/DOJ Investigation.* We received a subpoena from the SEC, which inquired about certain operations concerning sales of aircraft abroad. In response to this SEC-issued subpoena and associated inquiries into the possibility of non-compliance with the U.S. Foreign Corrupt Practices Act, or FCPA, we retained

6

outside counsel to conduct an internal investigation on transactions carried out in three specific countries.

The investigation remains ongoing and we, through our outside counsel, continue to cooperate fully with the SEC and U.S. Department of Justice, which are the authorities responsible for reviewing the matter. Our management, with the support of our outside counsel, has concluded that, as of December 31, 2011, it is still not possible to estimate the duration, scope or results of the investigation. In the event that an illegal activity is identified or the parties enter into an agreement to settle the matter, we may be required to pay substantial fines and/or to incur other sanctions, as provided in the FCPA. Our management, based upon the opinion of our outside counsel, believes that, as of December 31, 2011, there is no basis for estimating reserves or quantifying any possible contingency.

(Emphasis added.)

30.     The 2011 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Curado and Marques, stating that the financial information contained in the 2011 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     On March 26, 2013, Embraer filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2012 (the "2012 20-F").   For 2012, Embraer reported net income of $358.61 million, or $0.49 per diluted share, on revenue of $6.26 billion, compared to net income of $93.62 million, or $0.13 per diluted share, on revenue of $5.90 billion for 2011.

32.     In the 2012 20-F, Embraer stated, in part:

**We may be required to pay substantial fines and/or to incur other sanctions as a result of an inquiry by the SEC and U.S. Department of Justice concerning the possibility of non-compliance with the U.S. Foreign Corrupt Practices Act.**

We received a subpoena from the SEC and associated inquiries from the U.S. Department of Justice into the possibility of non-compliance with the U.S. Foreign Corrupt Practices Act, or FCPA, in September 2010, which inquired about certain operations concerning sales of aircraft abroad. The investigation remains ongoing and we, with the support of our outside counsel, have concluded that it is still not possible to estimate the duration, scope or results of the internal investigation or the government's review. In the event that the authorities take action against us or the parties enter into an agreement to settle the matter, we may be required to pay substantial fines and/or to incur other sanctions. See "Item

8A. – Consolidated Statements and Other Financial Information—Legal Proceedings."

. . .

**Legal Proceedings**

. . .

***SEC/DOJ Investigation.*** We received a subpoena from the SEC in September 2010, which inquired about certain operations concerning sales of aircraft abroad. In response to this SEC-issued subpoena and associated inquiries into the possibility of non-compliance with the U.S. Foreign Corrupt Practices Act, or FCPA, we retained outside counsel to conduct an internal investigation on transactions carried out in three specific countries.

Further, we have voluntarily expanded the scope of the internal investigation to include two additional countries and have reported on those matters. The investigation remains ongoing and we, through our outside counsel, continue to cooperate fully with the SEC and U.S. Department of Justice, which are the authorities responsible for reviewing the matter. We, with the support of our outside counsel, have concluded that it is still not possible to estimate the duration, scope or results of the internal investigation or government's review. In the event that the authorities take action against us or the parties enter into an agreement to settle the matter, we may be required to pay substantial fines and/or to incur other sanctions. We, based upon the opinion of our outside counsel, believe that there is no basis for estimating reserves or quantifying any possible contingency.

33.    The 2012 20-F contained signed certifications pursuant to SOX by Defendants Curado and Filippo, stating that the financial information contained in the 2012 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.    The statements referenced in ¶¶ 28-33 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company had paid bribes to officials in the Dominican Republic to secure contracts for the sale

of aircraft; (ii) Embraer's President and CEO, Defendant Frederico Curado, was aware of the bribery scheme at all relevant times; (iii) the foreseeable consequences of the foregoing conduct would cost Embraer hundreds of millions of dollars; and (iv) as a result of the foregoing, Defendants' statements about Embraer's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

35.    On November 1, 2013, after the market closed, *The Wall Street Journal* reported that Embraer was under investigation by the U.S. and Brazil concerning bribery of Dominican Republic officials to secure a contract for the sale of military aircraft. *The Wall Street Journal*'s article stated, in part:

> U.S. and Brazilian authorities are investigating whether aircraft maker Embraer SA bribed officials in the Dominican Republic in return for a $90 million contract to furnish the country's armed forces with attack planes, according to law enforcement documents and people familiar with the case.
>
> . . .
>
> U.S. authorities were investigating Embraer in 2010 for possible violations of the Foreign Corrupt Practices Act, an antibribery statute, according to regulatory filings. A request for evidence sent early this year by Brazil to the U.S., and reviewed by *The Wall Street Journal*, sheds new light on the probe.
>
> According to the February request, reviewed by the Journal, officials at the U.S. Department of Justice and the SEC first approached Brazilian authorities about an investigation of Embraer at an international anticorruption conference in Paris in March 2012.
>
> In the following months, the Americans said they had evidence—including bank records and emails—that they believed to show that Embraer executives had approved a $3.4 million bribe to a Dominican official with influence over military procurement, according to the request, which was made under a legal-assistance treaty between the two countries.
>
> The alleged payment led to the Dominican government in 2010 purchasing eight Embraer Super Tucanos, turboprop attack support aircraft that have been a darling of air forces in developing countries, the request said.

Embraer, which first disclosed the FCPA probe in 2011, said it has been cooperating with authorities. It hired law firm Baker & McKenzie LLP to conduct an internal investigation after receiving a subpoena from the SEC in September 2010, according to a regulatory filing.

"Integrity, transparency in its business transactions and ethics in its relationships are the principles that always guided Embraer. The Company requires that all its employees have a conduct of strict compliance with laws and regulations, as established in its corporate policies and in its Code of Ethics and Conduct," the company said in an emailed statement Friday. "Due to the mandatory confidentiality of the investigation, the company is unable to comment on it."

36.     On this news, Embraer's ADR price fell $0.17, or 0.57%, to close at $29.55 on November 4, 2013, the next trading day.

37.     On March 31, 2014, Embraer filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2013 (the "2013 20-F").  For 2013, Embraer reported net income of $361.77 million, or $0.49 per diluted share, on revenue of $6.34 billion, compared to net income of $358.61 million, or $0.49 per diluted share, on revenue of $6.26 billion for 2012.

38.     In the 2013 20-F, Embraer stated, in part:

***We may be required to pay substantial fines and/or to incur other sanctions as a result of an inquiry by the SEC and U.S. Department of Justice concerning the possibility of non-compliance with the U.S. Foreign Corrupt Practices Act.***

We received a subpoena from the SEC and associated inquiries from the U.S. Department of Justice into the possibility of non-compliance with the U.S. Foreign Corrupt Practices Act, or FCPA, in September 2010, which inquired about certain operations concerning sales of aircraft abroad. The investigation remains ongoing and we, with the support of our outside counsel, have concluded that it is still not possible to estimate the duration, scope or results of the internal investigation or the government's review. In the event that the authorities take action against us or the parties enter into an agreement to settle the matter, we may be required to pay substantial fines and/or to incur other sanctions. See "Item 8A. – Consolidated Statements and Other Financial Information—Legal Proceedings."

. . .

**Legal Proceedings**

. . .

> **SEC/DOJ Investigation.** We received a subpoena from the SEC in September
> 2010, which inquired about certain operations concerning sales of aircraft abroad.
> In response to this SEC-issued subpoena and associated inquiries into the
> possibility of non-compliance with the U.S. Foreign Corrupt Practices Act, or
> FCPA, we retained outside counsel to conduct an internal investigation on
> transactions carried out in three specific countries.
>
> Further, we have voluntarily expanded the scope of the internal investigation to
> include two additional countries and have reported on those matters. The
> investigation remains ongoing and we, through our outside counsel, continue to
> cooperate fully with the SEC and U.S. Department of Justice, which are the
> authorities responsible for reviewing the matter. We, with the support of our
> outside counsel, have concluded that it is still not possible to estimate the
> duration, scope or results of the internal investigation or government's review. In
> the event that the authorities take action against us or the parties enter into an
> agreement to settle the matter, we may be required to pay substantial fines and/or
> to incur other sanctions. We, based upon the opinion of our outside counsel,
> believe that there is no basis for estimating reserves or quantifying any possible
> contingency.

39.    The 2013 20-F contained signed certifications pursuant to SOX by Defendants

Curado and Filippo, stating that the financial information contained in the 2013 20-F was

accurate and disclosed any material changes to the Company's internal control over financial

reporting.

40.    On September 23, 2014, shortly before the market closed, *The Wall Street Journal*

reported that Brazilian authorities had filed bribery charges against eight Embraer employees,

claiming that they had bribed officials in the Dominican Republic to secure a $92 million

contract. *The Wall Street Journal* article stated, in part:

> Brazilian authorities have filed a criminal action against eight Embraer SA
> employees accusing them of bribing officials in the Dominican Republic in return
> for a $92 million contract to provide the country's armed forces with attack
> planes.
>
> The criminal complaint, filed under seal and reviewed by *The Wall Street Journal*,
> marks one of the first known efforts by Brazil to prosecute its citizens for

allegedly paying bribes abroad, a milestone achieved with help from the U.S. Department of Justice and the U.S. Securities and Exchange Commission.

The U.S. agencies are also investigating the company's dealings in the Dominican Republic and elsewhere and have provided their Brazilian counterparts with evidence, according to a request last year for legal assistance from Brazilian prosecutors.

. . .

"Because this matter is subject to an ongoing investigation in Brazil and the U.S., the company cannot comment further on any aspect of the case, including with respect to the proceeding in Brazil, where the Company is not a party to the investigation," Embraer said in an emailed statement.

41.     On this news, Embraer's ADRs fell $0.26, or 0.68%, to close at $38.25 on September 24, 2014.

42.     On March 27, 2015, Embraer filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2014 (the "2014 20-F"). For 2014, Embraer reported net income of $339.16 million, or $0.46 per diluted share, on revenue of $6.36 billion, compared to net income of $361.77 million, or $0.49 per diluted share, on revenue of $6.34 billion for 2013.

43.     In the 2014 20-F, Embraer stated, in part:

***Investigations by U.S. government authorities under the Foreign Corrupt Practices Act and related inquiries may result in substantial fines and other adverse effects.***

In September 2010, we received a subpoena from the Securities and Exchange Commission, or SEC, and associated inquiries from the U.S. Department of Justice, or DOJ, concerning possible non-compliance with the U.S. Foreign Corrupt Practices Act, or FCPA, in relation to certain aircraft sales outside of Brazil. We retained outside counsel to conduct an internal investigation, have cooperated with the SEC and the DOJ, and have voluntarily expanded our investigations. The U.S. government inquiries, related inquiries and developments in other countries, and our own internal investigations are continuing. Any action in these or related inquiries, proceedings or other developments, or any agreement we enter into to settle the same, may result in substantial fines and other sanctions and adverse consequences. See "Item 8A – Consolidated Statements and other Financial Information – Legal Proceedings."

**Legal Proceedings**

. . .

***SEC/DOJ Investigation.*** We received in September, 2010 a subpoena from the SEC and associated inquiries from the DOJ concerning possible non-compliance with the FCPA in relation to certain aircraft sales outside of Brazil. In response we retained outside counsel to conduct an internal investigation of sales in three countries.

In light of additional information, we voluntarily expanded the scope of the internal investigation to include sales in other countries, have reported on these matters to the SEC and the DOJ and have otherwise cooperated with them. The U.S. government inquiries, related inquiries and developments in other countries and our own internal investigation are continuing. Any action in these or related inquiries, proceedings or other developments, or any agreement we enter into to settle the same, may result in substantial fines and other sanctions and adverse consequences. Based upon the opinion of our outside counsel, we believe that there is no adequate basis at this time for estimating accruals or quantifying any contingency with respect to these matters.

44.     The 2014 20-F contained signed certifications pursuant to SOX by Defendants Curado and Filippo, stating that the financial information contained in the 2014 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.     The statements referenced in ¶¶ 37-39 and 42-44 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Embraer's President and CEO, Defendant Curado, was aware of the Company's bribery of Dominican Republic officials at all relevant times; (ii) the foreseeable consequences of the foregoing conduct would cost Embraer hundreds of millions of dollars; and (iii) as a result of the foregoing, Defendants' statements about Embraer's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

13

46.     On March 16, 2016, after the market closed, various media outlets reported that Sonnenfeld, a sales consultant who purportedly paid bribes on behalf of Embraer, had told Brazilian prosecutors that he believed the Company's top managers, including Defendant Curado, then CEO of the Company, knew of the illicit payments made in connection with the Dominican Republic sales.

47.     On March 29, 2016, Embraer filed an Annual Report on Form 20-F with the SEC for the year ended December 31, 2014 (the "2015 20-F").   For 2014, Embraer reported net income of $73.63 million, or $0.10 per diluted share, on revenue of $6.19 billion, compared to net income of $339.16 million, or $0.46 per diluted share, on revenue of $6.36 billion for 2014.

48.     In the 2015 20-F, Embraer stated, in part:

***Investigations by U.S. government authorities under the Foreign Corrupt Practices Act and related inquiries may result in substantial fines and other adverse effects.***

In September, 2010, we received a subpoena from the Securities and Exchange Commission, or SEC, and associated inquiries from the U.S. Department of Justice, or DOJ, concerning possible non-compliance with the U.S. Foreign Corrupt Practice Act, or FCPA, in relation to certain aircraft sales outside of Brazil. In response, we retained outside counsel to conduct an internal investigation of sales in three countries.

In light of additional information, we voluntarily expanded the scope of the internal investigation to include sales in other countries, reported on these matters to the SEC and the DOJ and otherwise cooperated with them. The U.S. government inquiries, related inquiries and developments in other countries and our internal investigation are continuous and we will continue to cooperate with the governmental authorities, as circumstances may require. We have begun discussions with the DOJ for a possible resolution of the allegations of non-compliance with the FCPA. A resolution of the U.S. government inquiries, and related inquiries, proceedings and developments in other countries would result in fines, which may be substantial, and possibly other substantial sanctions and adverse consequences. See "Item 8A – Consolidated Statements and other Financial Information – Legal Proceedings."

. . .

14

**Legal Proceedings**

. . .

***SEC/DOJ Investigation.***

In September, 2010, we received a subpoena from the Securities and Exchange Commission, or SEC, and associated inquiries from the U.S. Department of Justice, or DOJ, concerning possible non-compliance with the U.S. Foreign Corrupt Practices Act, or FCPA, in relation to certain aircraft sales outside of Brazil. In response, we retained outside counsel to conduct an internal investigation of sales in three countries.

In light of additional information, we voluntarily expanded the scope of the internal investigation to include sales in other countries, reported on these matters to the SEC and the DOJ and otherwise cooperated with them. The U.S. government inquiries, related inquiries and developments in other countries and the Company's internal investigation are continuous and we will continue to cooperate with the governmental authorities, as circumstances may require. We have begun discussions with the DOJ for a possible resolution of the allegations of non-compliance with the FCPA. A resolution of the U.S. government inquiries, and related inquiries, proceedings and developments in other countries would result in fines, which may be substantial, and possibly other substantial sanctions and adverse consequences. Based upon the opinion of its outside counsel, we believe that there is no adequate basis at this time for estimating accruals or quantifying any contingency with respect to these matters.

49.     The 2015 20-F contained signed certifications pursuant to SOX by Defendants Curado and Filippo, stating that the financial information contained in the 2015 20-F was accurate and disclosed any material changes to the Company's internal control over financial reporting.

50.     On June 9, 2016, after the market closed, Embraer announced that Defendant Curado was stepping down from his position as CEO after 32 years with the Company, and that Paulo César de Souza e Silva would replace Curado as of July 2016.

51.     On this news, Embraer's ADRs fell $1.18, or 5.44%, to close at $20.51 on June 10, 2016.

15

52.     The statements referenced in ¶¶ 47-49 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the foreseeable consequences of Embraer's bribery of officials in the Dominican Republic would cost the Company hundreds of millions of dollars; and (ii) as a result of the foregoing, Defendants' statements about Embraer's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

**The Truth Emerges**

53.     On July 29, 2016, Embraer filed a Form 6-K with the SEC, stating, in relevant part, that:

> [N]egotiations with the U.S. Department of Justice (DOJ) and the Securities and Exchange Commission (SEC) for the settlement of the allegations of non-compliance with the U.S. Foreign Corrupt Practices Act (FCPA) have significantly progressed, to the point that ***Embraer is recognizing a US$ 200 million loss contingency in the quarter ended June 30, 2016***, reflecting the likely outcome of this matter. The amount of the contingency is an estimate and has not been finally determined.
>
> In addition to the monetary consequences, a final settlement with the DOJ and SEC is likely to include: (1) a deferred prosecution agreement (DPA), under which the prosecution of criminal charges against Embraer will be deferred for the term of the DPA, and dismissed upon the expiration of the term of the DPA, and (2) an imposition of an independent monitor to assess the Company's compliance with the terms of any agreement that may be reached with the U.S. authorities.  These may not be the only non-monetary consequences contained in any final settlement.

(Emphasis added.)

54.     On July 29, 2016, Embraer also announced its financial and operating results for the quarter ended June 30, 2016.  Embraer reported, *inter alia*, the $200 million loss contingency described *supra* at ¶ 54 and a net loss for the quarter totaling $99.4 million, or $0.55 per share.

16

55.     On this news, Embraer's ADR price fell $2.93, or 13.82%, to close at $18.27 on July 29, 2016.

56.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Embraer securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

58.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Embraer securities were actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Embraer or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

59.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff have no interests antagonistic to or in conflict with those of the Class.

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Embraer;

- whether the Individual Defendants caused Embraer to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Embraer securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

63.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Embraer securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Embraer securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

64.     Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

65.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

66.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

67.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

68.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Embraer securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Embraer securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

69.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Embraer securities.  Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Embraer's finances and business prospects.

70.     By virtue of their positions at Embraer, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

71.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Embraer securities from their personal portfolios.

72.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Embraer, the Individual Defendants had knowledge of the details of Embraer's internal affairs.

73.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Embraer.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Embraer's

businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Embraer securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Embraer's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Embraer securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

74.     During the Class Period, Embraer securities were traded on an active and efficient market.  Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Embraer securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Embraer securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class.  The market price of Embraer securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

75.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

77.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     During the Class Period, the Individual Defendants participated in the operation and management of Embraer, and conducted and participated, directly and indirectly, in the conduct of Embraer's business affairs.  Because of their senior positions, they knew the adverse non-public information about Embraer's misstatement of income and expenses and false financial statements.

79.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Embraer's financial condition and results of operations, and to correct promptly any public statements issued by Embraer which had become materially false or misleading.

80.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Embraer disseminated in the marketplace during the Class Period concerning Embraer's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Embraer to engage in the wrongful acts

complained of herein. The Individual Defendants therefore, were "controlling persons" of Embraer within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Embraer securities.

81.     Each of the Individual Defendants, therefore, acted as a controlling person of Embraer.  By reason of their senior management positions and/or being directors of Embraer, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Embraer to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Embraer and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

82.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Embraer.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated:   August 8, 2016

Respectfully submitted,

**POMERANTZ LLP**


*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
1999 Avenue of the Stars
Suite 1100
Telephone: 1-800-977-7401
Fax: 1-800-536-0065
Email:  michael@goldberglawpc.com
Email:  brian@goldberglawpc.com

***Attorneys for Plaintiffs***