# POMERANTZLLP

Jeremy A. Lieberman
Managing Partner
*jalieberman@pomlaw.com*

January 20, 2017

**VIA CM/ECF**
Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 17B
New York, New York 10007

    Re:    <u>*Kukkadapu, et al., v. Embraer S.A., et al.*, 16-cv-6277 (RMB)</u> ("Action")

Dear Judge Berman:

We represent Lead Plaintiff Employees' Retirement System of the City of Providence ("Plaintiff") in the Action and respond to Embraer S.A.'s January 18, 2017 letter (ECF No. 57). Defendants violated Sections 10(b) and 20(a) of the U.S. Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5. For nearly a decade, Defendants executed and concealed a sprawling bribery scheme, involving the governments of the Dominican Republic, Saudi Arabia, Mozambique, and India. ¶3.[1] Embraer admitted that its high-level executives helped effectuate $11.5 million in bribes for government contracts, generating $463.1 million in revenue and $83 million in profits (7% of its net income throughout the Class Period[2]). *Id.* Embraer agreed to pay over $200 million (16% of its net income throughout the Class Period) to U.S. and Brazilian regulators for violating the U.S. Foreign Corrupt Practices Act of 1977 ("FCPA") and other laws. Regulatory investigations involving the Company are ongoing. *Id.* Plaintiff amply alleges materially false and misleading statements and omissions, scienter, and loss causation. Moreover, the Action is timely, and subject matter jurisdiction is easily satisfied.

---

[1] "¶__" refers to citations to the paragraphs in the Amended Complaint (ECF No. 35).
[2] The Class Period is from January 11, 2012 through and including November 28, 2016.

1. Plaintiff alleges several categories of materially misleading statements and omissions, including statements regarding Embraer's bribe-tainted aircraft agreements, the nature of subsidiaries that effectuated the bribes, internal controls, and false Sarbanes-Oxley Act certifications. ¶13. Plaintiff alleges (i) the misleading nature of Embraer's reported revenue, costs, and income during the Class Period, which were secured through and hid the illegal bribes, and (ii) the insufficient provisions to account for liability caused by Defendants' illicit conduct. ¶¶130, 144, 152-53, 164, 223-26, 235. Embraer's false statements regarding its Code of Ethics and other statements that concealed the bribery scheme are similarly actionable.[3]

2. Plaintiff's allegations of scienter are overwhelming. Embraer's admissions to regulators demonstrate unquestionable culpability: for example, in an agreement with the U.S. Department of Justice, Embraer admitted that the gravity of its offenses was "pervasive[] throughout each of the Company's three separate sales divisions and [had] involvement of high-level executives in each set of criminal conduct[.]" ¶6. Brazilian regulators named as criminal defendants 10 former Embraer executives, including Executive Board ("EB") members, including Defendants Luiz Aguiar and Flavio Rimoli. ¶7. Defendants who made Class Period statements (or had ultimate

---

[3] *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250-51 (2d Cir. 2014) (defendant's pollution violations, even though defendant disclosed potential noncompliance costs, were actionable); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 377-81 (S.D.N.Y. 2016) (financial-statement errors concealing bribes and company-integrity statements repeatedly made to reassure investors were both actionable); *In re Barrick Gold Sec. Litig.*, 2015 U.S. Dist. LEXIS 43053, at *33-35 (S.D.N.Y. Apr. 1, 2015) (finding materiality where defendants knew of environmental violations, while disclosing compliance with environmental rules). Embraer's false statements in its Code of Ethics—for example, "Embraer prohibits its [executives] from authorizing … illegal payments to obtain business advantages[,]" ¶194—are distinguishable from the inactionable "explicitly aspirational" statements in *City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014). The *UBS* decision, *id.* at 183-84, is also distinguishable because here, Embraer provided benign warnings about potential fines, including statements that "there [was] no basis for estimating reserves or quantifying any possible contingency[,]" ¶15.

authority to do so, *see* ¶¶77-80) are clearly alleged to have knowledge of the fraud. *See* ¶¶ 8, 9, 10, 11, 115-29, 637-74.[4]

3. Plaintiff's loss-causation allegations readily meet the burden imposed by Rule 8(a) of the F.R.C.P. Over a dozen curative disclosures revealed details about Embraer's bribery schemes or reflected a materialization of the risk triggered by Defendants' brazen bribery schemes. ¶¶607-36. Embraer's arguments to the contrary are clearly factual inquiries inappropriate for resolution at the pleadings stage.[5]

4. The claims are not barred by the two-year limitations period of 28 U.S.C. §1658(b)(1). Embraer muted the severity of the FCPA investigations' likely consequences by disclosing that, in essence, since receiving the SEC subpoena in 2010, it was "unable to predict duration, scope or results of the investigation" and that "there [was] no basis for estimating reserves or quantifying any possible contingency." ¶15. It is incredible for Embraer to now argue that a diligent plaintiff should have discovered sufficient facts by 2014[6] to allege a complaint under the Private Securities Litigation Reform Act, even though it took Embraer itself almost six years, through investigations, to begin revealing concrete facts about the bribery schemes that it both contrived and executed.

5. The limitations on extraterritorial reach provided by *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), are wholly inapplicable to Plaintiff's transactions. Plaintiff purchased Embraer securities during the Class Period on the NYSE, thereby conferring subject matter jurisdiction on this Action. ¶22.

---

[4] These factually rich allegations of Defendants' knowledge of the schemes is distinguishable from the allegations in *Slayton v. American Express Co. See* 604 F.3d 758, 773-77 (2d Cir. 2010).

[5] *See, e.g., In re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 343-44 (S.D.N.Y. 2015) (additional news about investigation developments could be a basis for loss causation: "At a later stage, defendants may challenge the novelty and accuracy of plaintiffs' alleged news and its impact on the market, but plaintiffs have adequately alleged loss causation"); *Barrick*, 2015 U.S. Dist. LEXIS 43053 at *38-41 (plaintiffs sufficiently alleged loss causation related to adverse litigation results, even though defendants warned investors beforehand about the specific litigation).

[6] *See Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010).

Respectfully,

**POMERANTZ LLP**

By: _____
Jeremy A. Lieberman
Justin S. Nematzadeh

*Lead Counsel for Plaintiff and the Class*

cc: All counsel of record via ECF

4